**DISTRICT OF COLUMBIA, Appellant,**

v.

**Judy A. GANTT, Appellee.**

**No. 87–437.**

District of Columbia Court of Appeals.

Argued Jan. 11, 1989.
Decided May 3, 1989.

---

Martin B. White, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Lawrence M. Spillan, Washington, D.C., for appellee.

Before MACK, FERREN, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

Pursuant to D.C.Code § 21–586 (1981), the District of Columbia sued to recover $94,700.56 from the estate of John Wilbur Williams for the care and maintenance of Williams' wife at St. Elizabeths Hospital from 1945 to 1982. The trial court granted summary judgment for the appellee, Judy A. Gantt, Mr. Williams' daughter and the personal representative of his estate. The court ruled that D.C.Code § 20–903(a) (1981) required the District to present its claim within the six-month period beginning with the publication of notice of the appointment of the personal representative and that the District—by filing too early—

had failed to do so. Because we do not agree with the trial court's statutory interpretation, we reverse and remand for further proceedings.

## I.

Mr. Williams died on January 23, 1982, and his will was filed with the office of the Register of Wills on February 5, 1982. On February 18, 1982, the District of Columbia docketed its claim with that office, which, according to then-existing practice, placed the claim in the "claims docket."[1] Sometime thereafter, Mr. Williams' daughter, Ms. Gantt, was appointed personal representative of his estate. Notice of that appointment was first published on March 9, 1984. After the Register of Wills established the "administration docket" for the Williams estate (a file folder containing the record of estate administration), the following information was stamped on the front of the file jacket: "Recorded in Docket of Claims No. 85 Folio No. 397." On March 12, 1985, over six months after the period for filing claims had closed, the District served notice of its claim on Ms. Gantt through her counsel. Ms. Gantt disallowed the claim. The District filed suit.

The trial court granted summary judgment for Ms. Gantt based on her argument that the claim had not been properly presented within the six-month time frame for presentation of claims established by D.C.Code § 20–903(a) (1981). Because the District's claim had been filed with the Register of Wills on February 18, 1982, and with the personal representative on March 12, 1985—neither of which fell between March 9, 1984, the date of the first publication of notice of appointment, and September 9, 1984,[2] six months later—the trial court ruled that the claim was not timely. The court added that the District could not rely on the claim procedures permitted by the Register of Wills because a clerical practice cannot supersede the requirements of the statute. According to the trial court "[a] different result would be arbitrary without assurance of actual notice [to] the Personal Representative."

## II.

On appeal, the District argues that § 20–903(a) does not preclude a claim filed before notice of appointment of the personal representative, and that the filing procedures then in use by the Register of Wills in 1982 were reasonably calculated to give notice of the claim to the personal representative eventually appointed.

D.C.Code § 20–903(a) (1981) provides in relevant part:

[A]ll claims against a decedent's estate ... shall be barred against the estate, the personal representative, and the heirs and legatees, unless presented within 6 months after the date of the first publication of notice of the appointment of a personal representative....

This language does not clearly state whether a claim may only be filed within the specified six-month period or may be filed earlier but no later than the end of that period. We therefore must look at the legislative history of the statute. *See Sanker v. United States,* 374 A.2d 304, 307 (D.C.1977) (proper to look at legislative history when words of statute are ambiguous).

Section 20–903 was enacted as part of the Probate Reform Act of 1980, an act intended to "revise and modernize" estate administration procedures. Committee on the Judiciary, Council of the District of Columbia, Report on Bill 3–91, The District of Columbia Probate Reform Act of 1980, at 1 (March 12, 1980) (hereafter Committee Report). One reason for reform of the statutory provisions applicable to creditors' claims was that, under then-existing law, the final date for filing claims against the

---

**1.** On August 22, 1984, the Register of Wills changed this practice. That office no longer accepts claims filed before the appointment of a personal representative. Nor does it maintain a "claims docket" for decedents who died on or after January 1, 1981 (although it still maintains a claims docket for decedents who died before that date). Accordingly, the principal issue presented in this case is no longer likely to arise.

**2.** The trial court's order used September 2, apparently a typographical error.

estate was "unpredictable and amorphous." *Id.* at 64. Existing law incorporated various statutes of limitations applicable to claims against an estate, and this left uncertainty about how long estate assets should be reserved for claimants before the estate could be distributed with finality. *Id.* at 65–66. These time limitations were complicated, moreover, by the variety of ways creditors could assert their claims and a personal representative could notify creditors of an intent to distribute the estate. *Id.* at 64–65. The Probate Reform Act replaced these procedures with a new system that provides an orderly procedure for presenting claims to a personal representative.

The Committee Report shows that, in adopting § 20–903(a), the Council of the District of Columbia focused only on a termination date for the filing of claims, not on a beginning date as well. The Committee wrote:

> The new section [§ 20–903] is grounded on the policy that assertion of claims against heirs and legatees after distribution is onerous. Accordingly, section 20–903 attempts to create a determinable cut off point (after notice of appointment of the personal representative) after which distributees of the estate can be substantially assured of no further claims against estate property.

*Id.* at 67. Arguably, this language also could be read to intimate a starting point for the presentation of claims ("after notice of appointment of the personal representative"). But, more reasonably interpreted, the Committee language should be understood to suggest—and we so hold—that the statute creates only a cutoff point measured by reference to the date of notice of appointment of the personal representative. The main purpose of this provision is to establish finality in the assertion of claims so that a personal representative can decide claims and distribute the estate with reasonable dispatch. This purpose would not be enhanced by establishing a date before which claims could not be filed—assuming, of course, a reasonable assurance that any claim filed before appointment of the personal representative would be communicated to that representative before the six-month period expired.

Other jurisdictions have read statutory language defining a period "within" which claims must be filed to establish only a deadline for the filing of claims; as a result, they have permitted the filing of claims before appointment of the personal representative. For example, in *In re Kruse's Estate,* 170 Kan. 429, 226 P.2d 835 (1951), the court held that claims filed approximately a month before the first published notice to creditors (and the appointment of the estate's administrator) were timely although the governing statute required that claims be filed within nine months after such notice.[3] Similarly, in *State v. Griffin,* 171 Conn. 333, 370 A.2d 1301 (1976), the court ruled that a letter specifying a claim against the estate was properly filed under a statute providing time limits within which an administrator must cite creditors, even though the letter was sent two weeks before the heir had applied to become administratrix.[4]

■ Our interpretation of § 20–903(a)—that it creates only a cutoff point, not a starting point, for filing claims —is not undercut by D.C.Code § 20–901 (1981), which provides in part:

> No proceeding to enforce a claim against a decedent's estate may be revived or commenced before the appointment of a personal representative. After appointment, and until the estate is

---

3. The Kansas statute provided that "[a]ll demands ... against a decedent's estate ... not exhibited as required by this act within nine months after the date of the first published notice to creditors as herein provided, shall be forever barred from payment...." 170 Kan. at 432, 226 P.2d at 838.

4. The Connecticut statute provided: "The court of probate may order executors and administrators to cite the creditors of the deceased whose estate is in settlement before it to bring in their claims against such estate within such time, not more than twelve months nor less than three months, as it limits, by posting a notice to that effect...." 171 Conn. at 334 n. 1, 370 A.2d at 1302 n. 1.

closed, the procedures prescribed by this chapter shall be followed.

Ms. Gantt argues that § 20–901 makes clear that § 20–903(a) must have been intended to preclude creditors from making any claim against an estate until the appointment of the personal representative. The District replies that the § 20–901 reference to "proceedings" should be read more narrowly to preclude the filing of lawsuits against an estate before the appointment of the personal representative; it should not be read to bar the mere lodging of a claim earlier. We agree with the District's interpretation.

The legislative history of § 20–901 is inconclusive. In briefly discussing this provision, the Committee Report noted that "no claims against a decedent can be revived or begun before the appointment of the personal representative." Committee Report at 66. But in context this statement is ambiguous. Earlier drafts of the probate reform bill, however, do distinguish between "claims" and "proceedings" in a way that, we believe, has meaning for the statute as finally adopted.

The first probate reform bill drew substantially on the Uniform Probate Code (UPC), *see* Wellman, *Recent Developments in the Struggle for Probate Reform*, 79 MICH. L. REV. 501, 536 (1981), and copied the UPC's definitions of "claims" and "proceeding." *Compare* Uniform Probate Code § 1–201, 8 U.L.A. 30, 33 (1983) *with* Bill 1–144, D.C. Council, 1st Sess. § 1–201 (1975), 21 D.C.Reg. 4115, 4119 (1975). The definitions section of the bill, § 1–201, provided in part:

(4) "Claims", in respect to estates of decedents and protected persons, includes liabilities of the decedent or protected person whether arising in contract, in tort or otherwise....

\* \* \* \* \* \*

(32) "Proceeding" includes action at law and suit in equity.

21 D.C.Reg. 4115, 4119 (1975). The substantive provisions of the final bill governing creditors's claims closely resemble this earlier bill. *Compare* D.C.Code §§ 20–901 to –914 (1981) *with* Bill 1–144, D.C. Council, 1st Sess. §§ 3–801 to –816 (1975), 21 D.C. Reg. 4232–43 (1975). While the definitions section of the final bill omits any reference to "claims" or "proceeding," *see* D.C.Code § 20–101 (1981), the definitions in the first bill, on which the later-enacted creditors' provisions were modeled, should not be ignored. We believe they have probative value showing that § 20–901 was meant to prohibit only the filing of lawsuits, not the presentation of claims, before appointment of the personal representative.

This interpretation of § 20–901 is further supported by the general statutory scheme and purposes of the Probate Reform Act. The Act has established two preconditions to suit against an estate. The first is presentation of the claim to the personal representative as required by § 20–903(a). The second is filing a verified complaint in court within 60 days after the personal representative disallows the claim. D.C. Code § 20–908(a) (1981). These provisions therefore channel claims against the estate initially through the personal representative who can decide to allow and pay the claims, disallow the claims, or seek judicial advice on whether to allow the claims. *See id.* Section 20–901 furthers this orderly scheme by precluding the filing of lawsuits against the estate before appointment of the personal representative and, accordingly, by forcing claimants to channel their claims through the personal representative before filing suit. Thus, the purposes underlying § 20–901 would not be served by barring presentation of claims, as such, before appointment of the personal representative. For all these reasons, therefore, Ms. Gantt's § 20–901 argument must fail.

In concluding that §§ 20–901 and 20–903(a) do not preclude the filing of claims against a decedent's estate before the six-month period in § 20–903(a) begins to run, we do not further conclude that a claimant *must* be allowed to file before appointment of the personal representative. We note that the Register of Wills no longer permits that practice, *see supra* note 1, and we perceive no statutory basis for believing that the Register does not have that discre-

tion, in the interests of orderly estate administration.

### III.

There is still another issue: even if the District's claim was timely presented, did the procedures followed give proper notice of the claim to the personal representative? Although § 20–903(a) does not preclude the filing of claims before appointment of the personal representative, the statutory scheme obviously would be undermined if a claim were deemed filed but the personal representative never received notice of it.

### A.

D.C.Code § 20–905 (1981)[5] supplies the procedures for giving notice of claims to personal representatives. Under § 20–905(a), a claimant must present a verified claim to both the personal representative and the Register of Wills. But, for purposes of filing within the six-month time limit, a claim is "deemed presented if *inadvertently* it is only sent either to the personal representative or to the Register" of Wills. *Id.* (emphasis added). The District concedes that, having filed a claim only with the Register of Wills before the six-month period expired, it has complied with § 20–905(a) only if it "inadvertently" failed to notify the personal representative by September 9, 1984.

We also note, however, that § 20–905(c) grants the trial court discretion to allow or disallow a claim if, among other things, "the claimant fails to comply with subsections (a) and (b)...." *See Estate of Phillips*, 532 A.2d 654, 656 (D.C.1987) (discretion under § 20–905(c) to "disallow" claims implies discretion to "allow" claim as well,

and under circumstances trial court should have allowed claim by attorney who had not complied with formalities required by § 20–903(a) and § 20–905). Theoretically, therefore, the District is not precluded from arguing that, even if its failure to notify the personal representative in time was not literally inadvertent, its claim under the circumstances should be allowed.

■ In *Estate of Phillips, supra,* we identified one such circumstance. The attorney-creditor's claim was undisputed except for his failure to comply with § 20–903(a) and § 20–905. We reversed and remanded for entry of judgment for the creditor because at least one personal representative and counsel for the estate had actual notice of the claim during the statutory six-month period. From *Phillips* it follows that, if the personal representative has actual knowledge of a claim during the statutory six-month period, the personal representative and the court may not disallow the claim for failure to comply with all the formalities of § 20–903(a) and § 20–905. *See Phillips*, 532 A.2d at 656.

On this record, we cannot tell whether Ms. Gantt had actual knowledge of the District's claim during the statutory six-month period. The question, then, becomes whether we nonetheless can rule on this record, as a matter of law, that the District's timely filed claim with the Register of Wills alone was properly presented to the personal representative within the meaning of § 20–905(a) or (c).

### B.

■ We turn first to § 20–905(a). If the word "inadvertently" receives a generous interpretation, there will probably be little

---

**5.** Section 20–905 provides:

(a) A claimant shall present a claim against a decedent's estate by delivering or mailing, return receipt requested, a statement of the claim, verified in accordance with section 20–102:

(1) to the personal representative with a copy to the Register; or

(2) to the Register with a copy to the personal representative.

For purposes of presenting a claim within the 6-month time limits provided in section 20–903, a claim shall be deemed presented if

inadvertently it is only sent either to the personal representative or to the Register pursuant to this section.

(b) A statement of claim shall state:

(1) the name and address of the claimant;

(2) the basis of the claim;

(3) the amount claimed; ....

(c) The Court may, in its discretion, disallow a claim, in while or in part, if the claimant fails to comply with subsections (a) and (b) or with the personal representative's reasonable requests for additional information.

if any need for an argument that a claim should be allowed under § 20–905(c) despite the lack of inadvertence. On this record, however, it would be unwise for us to try to resolve how broadly or narrowly the concept of inadvertence under the statute should be defined. We do not know the facts that would show why the District did not notify the personal representative, Ms. Gantt, during the six months after her appointment; thus, we cannot tell whether the argument for inadvertence here, if accepted, would fall easily within a dictionary definition or not. The question of compliance with § 20–905(a), therefore, will have to be answered by the trial court on remand unless we can resolve the case as a matter of law under § 20–905(c).

Any statutory argument for allowance of the District's claim under § 20–905(c) must be addressed to the trial court's discretion, and thus we can rule under that provision without a remand only if the trial court on this record has "but one option." *Johnson v. United States*, 398 A.2d 354, 364 (D.C. 1979); *see Estate of Phillips*, 532 A.2d at 656. We therefore turn to the facts of record and the procedures followed in this case.

D.C.Code § 20–905 (1981) does not detail the types of filing procedures the Register of Wills must maintain. The legislative history, however, makes clear that this section "is the practical vehicle for the personal representative determining the outstanding claims against the estate and thereafter planning the closing of the estate." Committee Report at 69. By allowing for timely presentation of claims to the Register alone if, inadvertently, the claimant failed to deliver a copy to the personal representative, the statute places responsibility on the Register of Wills to establish a claims filing system reasonably calculated to acquaint the personal representative with all claims. On the other hand, the statute also implies that the personal representative has a responsibility to seek out claims in the Register's filing system. This leaves the question whether a reasonably diligent personal representative of the Williams estate could have failed to uncover the District's claim filed with the Register before her appointment.

The record shows that the office of the Register of Wills accepted the District's claim against the Williams estate before the notice of appointment of the personal representative had been published; it placed the claim in a so-called "claims docket"; and, sometime after appointment of the personal representative, the Register's office stamped the "administration docket" for the Williams estate with a cross-reference to the claims docket. Because of an incomplete record, however, we cannot say as a matter of law that the Register's procedure in this case, evaluated in light of the kind of effort reasonably required of a personal representative, was adequate—or inadequate—to alert Ms. Gantt to the District's claim.

More specifically, we do not know the effect, if any, on docketed claims of the decision of the Register of Wills to discontinue the claims docket as of August 22, 1984, for decedents who died on or after January 1, 1981 (while retaining it for those who died before that date). *See supra* note 1. Probably we could reasonably assume that claims already docketed against the estate of Mr. Williams, who died after January 1, 1981, either remained on the claims docket or were expeditiously transferred to the administration docket for his estate by the six-month deadline for claims ending September 9, 1984. In either case, therefore, Ms. Gantt would have had notice of the District's claim, assuming, as we must, that she took the steps reasonably required of a personal representative to discover timely claims filed only with the Register of Wills. The record, however, reflects possible traffic in files, as well as an undated cross-reference to the claims docket, that conceivably could have affected the personal representative's opportunity for effective notice of the District's claim. We cannot imagine a series of events during this administrative changeover that, in themselves, could preclude allowance of the District's claim. But, absent a clear record of what actually happened to the relevant files in this case, we would be more comfortable leaving it to the

trial court to determine whether there could be any reasonable basis for disallowing the District's claim under § 20–905(c)—if the case is not earlier resolved under § 20–905(a).[6]

## IV.

Thus far we have confined our analysis to statutory interpretation, but the District argues that the Supreme Court's recent decision in *Tulsa Professional Collection Servs. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), compels allowance of the District's claim. *Pope* held that the due process clause requires the personal representative of an estate to provide actual notice of probate proceedings by mail or equally reliable means to all creditors whose identities are "known or reasonably ascertainable" (publication will suffice for other creditors). *Id.* 108 S.Ct. at 1347, 1348. Creditors are "reasonably ascertainable" if the personal representative can learn about them through " 'reasonably diligent efforts.' " *Id.* 108 S.Ct. at 1347 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983)).

■ The fact that a personal representative has a constitutional obligation to notify all "known or reasonably ascertainable creditors"—and, *a fortiori*, all creditors whose actual claims are known—does not necessarily suggest a constitutional responsibility to honor all such claims irrespective of the creditor's efforts to comply with statutory claims procedures once notified. At least as to creditors who are "known or reasonably ascertainable," but whose pre-

cise claims have not yet been revealed, a personal representative has no implied obligation under *Pope* to honor claims that are not timely presented in response to the required actual notice.

In any event, the District already had filed a claim with the Register of Wills by the time appellee Gantt was appointed personal representative. In this situation, Gantt's obligation under *Pope* to notify all reasonably ascertainable creditors about the probate proceedings adds nothing, as a practical matter, to Gantt's statutory responsibility, *supra* Part III.B., to take the steps reasonably required to discover claims timely filed with the Register of Wills. It is possible, of course, for the trial court, on remand, to find that the District's failure to file its claim with Gantt was not "inadvertent," that Gantt did not know about the District's claim within the statutory six-month period, and that Gantt, for some reason, could not have reasonably been expected to discover the District's claim at the Register of Wills' office. In that case, there is room, theoretically, for an argument that Gantt violated a constitutional duty under *Pope* to notify the District as a "reasonable ascertainable" creditor[7] and that the District's claim, as a consequence, is still alive. The trial court is free to reach that argument, if necessary, on remand, but we believe that likelihood is sufficiently remote on this record that we need not discuss the implications of the argument further.

## V.

In summary, the District's claim was timely filed under D.C.Code § 20–903(a)

---

**6.** As indicated above, § 20–905(a) and § 20–905(c) provide different, theoretically unrelated, bases for allowing claims that have not been presented in accordance with the requirements of § 20–905(a)(2). If the trial court finds that the District's failure to present its claim to Ms. Gantt within the six-month period was "inadvertent," then the requirements of § 20–905(a) will have been satisfied. If the court finds the District's failure was not "inadvertent," and thus § 20–905(a) is not satisfied, then the District's right to have its claim considered pursuant to § 20–905(c) presumably will turn on whether Ms. Gantt knew about the claim, *see Phillips, supra,* or should have known about it upon taking the steps reasonably required of a personal representative who knows

there may be claims timely filed with the Register of Wills alone. Suppose that, if the § 20–905(c) analysis came first, the court were to find that Ms. Gantt did not know about the claim and could not have been reasonably expected to find it at the Register's office under the circumstances. The District would still prevail if (but only if) the court found that the failure to present timely notice of the claim to Ms. Gantt was "inadvertent."

**7.** *See, e.g.,* D.C.Code § 21–586 (1981) (financial responsibility of parents, spouse, and adult children to reimburse District of Columbia for costs of maintaining mentally ill person in hospital).

(1981). Furthermore, if Ms. Gantt had actual knowledge of the District's claim within the statutory six-month period, that claim may not be rejected for failure to follow statutory filing procedures. *See Phillips, supra.* If, however, Ms. Gantt was unaware of the District's claim, she may reject the claim if (but only if) two conditions are met: (1) within the meaning of § 20–905(a), the District's claim was not "inadvertently" filed in time only with the Register of Wills (instead of with both the Register and the personal representative), and (2) the court, in the exercise of sound discretion, has a reasonable basis for disallowing the claim under § 20–905(c). If the District's claim is not allowable on statutory grounds, it will be free to present constitutional arguments premised on *Pope, supra.* We reverse the trial court's order granting summary judgment and remand for further proceedings consistent with this opinion.

*So Ordered.*