In re ESTATE OF Allene BARNES.

Theodore J. and Geraldine E. Scheve, Appellants,

No. 99–PR–58.

District of Columbia Court of Appeals.

Argued April 6, 2000.

Decided May 18, 2000.

Kurt Berlin, with whom Daniel S. Roth was on the brief, Washington, DC, for appellants.

Patrick C. Hylton for appellee.

Before SCHWELB, RUIZ, and GLICKMAN, Associate Judges.

SCHWELB, Associate Judge:

In an order entered on November 30, 1998, the trial judge disallowed the claim of Theodore J. Scheve and Geraldine E. Scheve against the estate of Allene Barnes. The Scheves appeal. We reverse.

## I.

Prior to 1980, Allene W. Barnes was the owner of a home located at 1429 Parkwood Place, N.W., in Washington, D.C. In January, 1980, the property was auctioned for unpaid real estate taxes, and the Scheves purchased it at a tax sale. The Scheves received a tax deed on June 3, 1983. The deed was recorded four days later.

Allene Barnes died intestate on November 9, 1983. Her daughter, Traci Barnes, continued to reside at her deceased mother's home. In September 1987, the Scheves brought suit against Ms. Barnes in the Superior Court for possession of the premises. Ms. Barnes was represented in this action by attorneys from the Neighborhood Legal Services Program. Ms. Barnes' attorneys demanded a jury trial, and the case was certified to the Civil Division for trial pursuant to Super. Ct. L & T R. 6.[1] On December 4, 1990, the trial judge directed a verdict in Ms. Barnes' favor, concluding as a matter of law that the Scheves' tax deed was invalid.

On December 17, 1990, the trial judge imposed a lien in the Scheves' favor for the amount of taxes that they had paid, plus statutory interest at the rate of 6% per annum. See D.C.Code § 47–1308 (1997). The parties entered into a post-trial stipulation as to the amount of taxes and interest owed. The stipulation was signed by counsel for all parties and approved by the court.

Ms. Barnes appealed from the trial court's order. On November 18, 1993, this court held that the Landlord and Tenant

---

1. Ms. Barnes also interposed a plea of title, but she withdrew it prior to trial.

Branch lacked authority to impose a lien. *See Barnes v. Scheve,* 633 A.2d 62 (D.C. 1993). The Scheves' lien was therefore set aside. The decision in *Barnes I* was based entirely on the limited authority of the Landlord and Tenant Branch, *see* Super. Ct. L & T R. 1, 3, & 5, and the court made no ruling with respect to the stipulated determination as to the taxes paid by the Scheves.

Although *Barnes I* was decided almost exactly ten years after Allene Barnes' death, no decedent's estate had been opened and no personal representative had been designated. On December 20, 1994, in an attempt to facilitate repayment of the taxes he had paid on the decedent's property, Theodore J. Scheve filed a "petition for standard probate." In that petition Mr. Scheve requested that he be designated the decedent's personal representative on the basis that he was a "major creditor" of the estate.[2] In detailing the decedent's unsecured debts, however, Mr. Scheve went further and indicated, in effect, that he was a *judgment* creditor:

> Judgment entered for petitioner Theodore J. Scheve and spouse in CA No. 9388–87 in the amount of $11,923.95 plus pre and post judgment interest, making amount owed $14,729.34
>
> Repairs and improvements made by petitioner to 1429 Parkwood Pl., NW 1,650.00

In fact, Mr. Scheve was not a judgment creditor, for the judgment in CA No. 9388–87 had been reversed in *Barnes I.*

On March 26, 1996, Judge Kaye K. Christian of the Superior Court's Probate Division issued an order appointing Mr. Scheve to be personal representative of the estate of Allene Barnes. More than a year later, on May 22, 1997, Traci Barnes, who was at that time represented by her present counsel, filed a motion to vacate Mr. Scheve's appointment. In her motion, Ms. Barnes stated, *inter alia:*

> 1. In his Petition for Probate, Theodore Scheve stated that judgment was entered in his favor in the Superior Court Civil Division, CA No. 9388–87, in the amount of $11,923.95 and, as such, entitled him to file the said Petition.
>
> 2. Mr. Scheve, however, has failed to inform the Court that the said judgment of the trial court imposing a lien against decedent's property in his favor was in fact overruled by the Court of Appeals, No. 92–CV–85.

Ms. Barnes argued that because Mr. Scheve was not a judgment creditor, his appointment should be vacated, and she requested that she be designated successor personal representative of her mother's estate.

On June 2, 1997, Judge Cheryl M. Long of the Probate Division entered an order to which we shall refer as Order No. 1. In that order, the judge vacated Mr. Scheve's appointment and designated Traci Barnes as successor personal representative. The judge expressed displeasure with Mr. Scheve and his attorney for what she regarded as intentional deception on their part in depicting Mr. Scheve as a judgment creditor when the underlying judgment had been vacated. The judge further concluded that Ms. Barnes' motion "is meritorious and that Scheve did not have legal standing to serve as the fiduciary of this estate."[3] The judge did not address the question whether the estate was free of any obligation to repay the Scheves for the real estate taxes that they had paid on the decedent's residence.

On July 2, 1997, Mr. Scheve filed a motion to alter or amend Order No. 1. On October 17, 1997, in a two-page order

---

2. Our probate statute provides that, where persons with higher priority are not available, the court may appoint as personal representative "the largest creditor of the decedent who applies for administration." *See* D.C.Code § 20–303(a)(1)(J) (1997).

3. The court's conclusion appears to be in error. Under D.C.Code § 20–303(a)(1)(J), discussed in note 2, *supra,* a creditor need not be a judgment creditor, or even a secured creditor, in order to serve as the decedent's personal representative.

which we shall call Order No. 2, the judge denied this motion. The judge rejected Mr. Scheve's claim that he was eligible to serve as personal representative, holding that he was not "a judgment creditor or even a secured creditor of this estate." The judge stated that "in all respects, this [c]ourt must give heed to the appellate decision in [*Barnes I*], which still governs the status of Mr. Scheve with respect to any realty of this estate."

On September 14, 1998, more than a year after Ms. Barnes' appointment, and eleven months after Mr. Scheve's motion to alter or amend Order No. 1 was denied, the Scheves filed a "petition for payment of claim or unbarred judgment" in the amount of $15,560.34 for real estate taxes paid, expenses, and interest. The Scheves alleged that the successor personal representative had taken no action on their claim and that they were entitled to payment pursuant to D.C.Code § 47–1308 (1997). *See McCulloch v. District of Columbia,* 685 A.2d 399, 402 (D.C.1996). On November 30, 1998, in what we shall call Order No. 3, Judge Long denied the petition except as to expenses of $675.30 for publication, bond premium and appraisal.[4] The judge wrote:

> A prior order in the record has already resolved the question of whether the Petitioners are entitled to pursue any alleged judgment against this estate. They are not in fact judgment creditors at all. In an order filed on July 2, 1997 this court granted the Motion to Vacate the Order Granting Letters of Administration to Theodore Scheve. That motion was unopposed. Scheve never had a lawful basis to claim that he was a "major creditor" of this estate, as he claimed in his Petition for Probate. For the sake of brevity, this court will not repeat the merits of that issue. It suffices to say that this court's ruling is law of the case as to the judgment that was asserted or the underlying claim. For that reason alone, the bulk of the instant Petition is frivolous.

This appeal followed.

## II.

After the trial that was the subject of the appeal in *Barnes I,* the Scheves and Ms. Barnes stipulated that the Scheves paid a specific amount in real estate taxes on the decedent's property and that they were entitled to interest at the statutory rate. The trial judge approved the stipulation. Although this court's determination in *Barnes I* that the Superior Court's Landlord and Tenant Branch lacked authority to impose a tax lien is relevant to the mechanics available to the Scheves to enforce their rights, that decision has no bearing whatever on the merits of their claim.

■ "[E]quity abhors forfeitures ... [and] so indeed does the law." *Association of Am. R.Rs. v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citations omitted). Having paid a stipulated amount in taxes in order to obtain their tax deed, the Scheves are entitled to recover their payments, together with interest and related expenses, unless Ms. Barnes has a legally cognizable defense to their claim. In our opinion, she has presented no such defense.

■ In Order No. 3, the trial judge denied the Scheves' petition on the ground that it was barred by the "law of the case" as established in Order No. 1. The question before the court in Order No. 1 was whether Mr. Scheve was qualified to serve as personal representative when, contrary to his representation, he was not a judgment creditor. The basic issue in Order No. 3 was whether the Scheves were entitled to recover from the estate the taxes paid by them on the decedent's property. These issues are quite dissimilar, and the "law of the case" doctrine has no applica-

4. These three items were not contested by Ms. Barnes.

tion. *See, e.g., Kritsidimas v. Sheskin,* 411 A.2d 370, 371–72 (D.C.1980) (per curiam).[5]

■ The judge's analysis in Order No. 1, which she evidently adopted as relevant to Order No. 3, related largely to Mr. Scheve's representation that he was a judgment creditor when, in fact, he was not. The judge's displeasure with this statement is understandable, particularly if, as she evidently believed, the representation was intended to deceive the court. If the judge's reference in Order No. 3 to Order No. 1 was intended to suggest that Mr. Scheve's misrepresentation warranted the denial of his claim, we know of no authority for such a contention, and Ms. Barnes' attorney expressly disclaimed it at oral argument.[6] In any event, the incorrect representation was completely immaterial, for Mr. Scheve was not required to be a judgment creditor in order to qualify as personal representative. In Order No. 1, the judge invited Ms. Barnes to apply for relief pursuant to Super. Ct. Civ. R. 11, and sanctions available under that Rule, rather than dismissal of the claim, appear to be an appropriate potential remedy.[7]

■ Finally, Ms. Barnes contends that the Scheves' claim was properly denied as untimely.[8] She points out that no claim was filed with her after she was appointed

successor personal representative and that the Scheves' petition to the court was filed more than six months after her appointment became final. The Scheves take the position, on the other hand, that they effectively filed their claim several years earlier when Mr. Scheve referred to it in his petition for appointment as the decedent's personal representative. They argue that even if Mr. Scheve's earlier filing did not constitute a timely formal claim, their failure to file one with Ms. Barnes did not defeat their rights because Ms. Barnes had notice of the relevant facts and therefore was not prejudiced.

Our probate code provides, with exceptions not here relevant, that all claims against a decedent's estate are barred "unless presented within 6 months after the date of the first publication of notice of the appointment of a personal representative." D.C.Code § 20–903(a) (1997). The court may, in its discretion, disallow a claim in whole or in part if, *inter alia,* the claim is untimely. D.C.Code § 20–905(c) (1997). We have held, however, that "if the personal representative has actual knowledge of a claim during the statutory six-month period, the personal representative and the court may not disallow the claim for failure to comply with all the formalities of § 20–903(a) and § 20–905." *District of Columbia v. Gantt,* 558 A.2d 1120, 1125 (D.C.

5. As to whether the "law of the case" principles apply to successive orders entered by the same judge, *see Blyther v. Chesapeake & Potomac Tel. Co.,* 661 A.2d 658, 662–63 (D.C. 1995) (Ruiz, J., concurring).

6. It may be that the judge had in mind the "unclean hands" doctrine or some variation thereof. No such defense was invoked by Ms. Barnes, and we know of no authority for applying this "maxim of equity" to a legal claim for money expended on behalf of the decedent. *See, e.g., Truitt v. Miller,* 407 A.2d 1073, 1079–80 (D.C.1979); *First Am. Corp. v. Al–Nahyan,* 17 F.Supp.2d 10, 29 (D.D.C. 1998). Moreover, even if the claim against the estate were to be viewed as equitable in nature, Ms. Barnes could prevail under the "unclean hands" principle "only if the conduct of [Mr. Scheve] of which [she] complains was the cause of the obligation from which

[she] seeks to be relieved." *Ross v. Fierro,* 659 A.2d 234, 240 (D.C.1995). Ms. Barnes has made no such showing.

7. So far as we are aware, however, no motion for sanctions was filed. We note that the judge also referred the matter to Bar Counsel. Mr. Scheve's counsel advised us at oral argument that Bar Counsel decided not to take any action on the referral.

8. It is not at all clear that the judge considered lack of timeliness in denying the Scheves' petition. She made no explicit mention of the issue in Order No. 3, although she did state, in general terms, that "the arguments of the fiduciary are well-grounded." Ms. Barnes' opposition to the Scheves' claim stated, *inter alia,* that "[t]he time for presentation of any unsecured, unliquidated claims has expired."

1989). In such circumstances, and especially where the merits of the claim are not disputed, there is no basis for a discretionary denial of the claim pursuant to § 20–905(c). *See In re Estate of Phillips*, 532 A.2d 654, 655–56 (D.C.1987).

There can be no question that Ms. Barnes was well aware of the Scheves' claim, and she has been unable to articulate any credible assertion of prejudice. As a practical matter, the filing of a formal claim by the Scheves after Ms. Barnes became successor personal representative would not have provided Ms. Barnes with any information that she did not previously have. Assuming, without deciding, that there has been technical noncompliance by the Scheves with § 20–903(a), we are satisfied that *Gantt* and *Phillips* control. Accordingly, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*[9]

---

9. We do not believe that the Scheves' default in a subsequent action to quiet title with respect to the Parkwood Place property has any relevance to the issues in this appeal.