In re ESTATE OF Robert E. BRYANT.

Topel Blueprinting Corporation,
Appellant,

v.

Shirley M. Bryant, Appellee.

No. 98–PR–1405.

District of Columbia Court of Appeals.

Argued April 11, 2000.
Decided March 14, 2002.

of law that constructive notice by publication was sufficient. We do agree with the trial court, however, that Ms. Bryant did not breach her duties as personal representative when she returned money to the surviving partner which he had paid her to purchase Robert Bryant's interest in the partnership. Returning that money was proper, even though it rendered Ms. Bryant unable to pay Topel's claim herself from assets of Robert Bryant's Estate, because it comported with a statutory duty of the surviving partner to pay partnership creditors ahead of the Estate of the deceased partner.

## I.

Robert Bryant and his brother, Charles Bryant, were partners in an architectural firm, Bryant and Bryant. On February 2, 1995, Robert Bryant died. Shortly thereafter, Charles Bryant received an insurance check in the amount of $391,632.56, representing the proceeds of a "key man" insurance policy that he held on Robert Bryant's life. By the terms of a cross purchase agreement that was incorporated in the Bryant and Bryant partnership agreement, Charles Bryant was obligated to use the insurance proceeds to purchase Robert Bryant's interest in the partnership from his Estate. To fulfill that obligation, Charles Bryant endorsed the insurance check and turned it over to Shirley Bryant on February 28, 1995. Ms. Bryant accepted the check on behalf of her husband's Estate, as its "personal representative," although this was before her appointment by the court to serve in that capacity (which occurred about two months later).

Ms. Bryant deposited the insurance check into a bank account that she opened in the Estate's name, and then immediately transferred almost all the money, $390,000, to a partnership bank account

Mark M. Kodama, Washington, DC, for appellant Topel Blueprinting Corporation.

Richard J. O'Connor for appellee Shirley M. Bryant.

Before SCHWELB, REID and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge.

This appeal concerns the duties that the personal representative of the estate of a partner in a general partnership owes to a creditor of the partnership. Appellant Topel Blueprinting Corporation ("Topel") sued appellee Shirley M. Bryant, the personal representative of the Estate of her husband, Robert E. Bryant, seeking to hold her liable for an obligation of Mr. Bryant's partnership and, derivatively, of the Estate. The trial court granted summary judgment to Ms. Bryant. We affirm. We do not agree with the trial court that Topel's claim was time-barred as a consequence of Topel's failure to present it within six months after Ms. Bryant published notice of her appointment as personal representative. Ms. Bryant did not provide Topel with actual notice of her appointment, and she did not establish as a matter

under the control of Charles Bryant, who was continuing the business as a sole proprietorship.[1] A portion of this payment was treated as reversing a negative balance of $155,027 in Robert Bryant's capital account, and the rest was treated as a loan of $234,973 to be used by Charles Bryant to pay the partnership's creditors.[2] As Ms. Bryant subsequently testified in connection with her summary judgment motion in this case, she knew from conversations with her late husband that the partnership was "heavily in debt," though she did not know, and (until Topel sued her) never tried to learn, the identities of the creditors other than the IRS. Instead, since she "didn't have anything to do with the day-to-day operations" of the partnership, Ms. Bryant entrusted the insurance money to Charles Bryant; he "was running the affair" and she thought he "was going to take care of it." Ms. Bryant testified that although she was advised by counsel throughout the probate proceedings, she was not aware that she had any duty as personal representative to "try to run down and track down every person [to whom Bryant and Bryant] owed" money.

One creditor whose identity Shirley Bryant did not know was Topel Blueprinting Corporation. As of February 1995, Bryant and Bryant allegedly owed Topel over $39 thousand for blueprinting services Topel had rendered.

On May 9, 1995, the Superior Court formally appointed Ms. Bryant to serve as personal representative of her husband's Estate. Beginning on May 25, 1995, Ms. Bryant published notice of her appointment in two publications for three successive weeks. The notice advised creditors of Robert Bryant to present their claims within six months, i.e., by November 25, 1995, or the claims would be unenforceable. Ms. Bryant did not mail a copy of the notice to Topel or otherwise provide Topel with actual notice of the probate proceedings.

Topel apparently was unaware for some time of Robert Bryant's demise and the administration of his Estate. Not until November 1996, a year and a half after the published notice, did Topel present its claim against the Estate. At that same time, Topel sued Shirley Bryant in the Probate Division of the Superior Court for the $39 thousand owed it by Bryant and Bryant, charging that she improperly had distributed assets of Robert Bryant's Estate that could have been used to pay the debt.

In due course, Topel and Shirley Bryant filed cross motions for summary judgment addressing whether Topel's claim was time-barred and, if not, whether Ms. Bryant was liable to Topel as either sole legatee under her husband's will or personal representative of his Estate. The trial court held a hearing on the motions, at which it received testimony from Ms. Bryant, Charles Bryant, and Topel vice-president Blaine Topel.[3] Awarding sum-

1. This transfer left $1,632.56 in insurance proceeds remaining in the Estate's bank account. The record does not indicate the disposition of that residual sum, nor have the parties made an issue of it.

2. A little over one year later, on May 8, 1996, Charles Bryant gave Shirley Bryant a note in which he promised to repay the $234,973 with interest at the rate of five percent per annum. Charles Bryant had not made any payments on the note by December 1996,

when he filed for bankruptcy. During oral argument in the present appeal, Topel's counsel informed us that the trustee in Charles Bryant's bankruptcy rejected Ms. Bryant's claim.

3. See Occidental Realty Co., v. Gen. Ins. Co. of Am., 301 A.2d 66 (D.C.1973) (holding that court has discretion to hear oral testimony on a motion for summary judgment).

mary judgment for Ms. Bryant and against Topel, the trial court held that Topel's claim was untimely because it was not "presented within 6 months after the date of the first publication of notice of the appointment of a personal representative," as required by D.C.Code § 20–903(a) (1981 and 1989 Repl.).[4] The court rejected Topel's argument that Ms. Bryant should have ascertained its identity as a creditor and given it actual notice of the probate proceedings by mail or other equally reliable means. The court concluded that constructive notice by publication was sufficient in this case because Ms. Bryant had "made reasonably diligent efforts to ascertain the identities of creditors and meet any debt owed" when she transferred $390,000 to Charles Bryant for payment of creditors' claims.

The trial court also ruled that Shirley Bryant was not liable to Topel in any event, either as a legatee or as a personal representative. Ms. Bryant had no liability as a legatee because she did not receive a distribution of any Estate property.[5] She had no liability as a personal representative, the court held, because she fulfilled her obligations to creditors when she transferred the $390,000 back to Charles Bryant to pay the creditors' outstanding claims.

Topel filed a motion to alter or amend the trial court's judgment pursuant to Super. Ct. Civ. R. 59(e).[6] Denying that motion, the court issued a written opinion reaffirming its ruling that Topel's claim was untimely and further explaining its

ruling that Shirley Bryant fulfilled her duties as personal representative. In that opinion, the court acknowledged that Robert Bryant's Estate was liable for the debts of his partnership, and that Ms. Bryant therefore owed a fiduciary duty to Topel in her role as personal representative of the Estate. As surviving partner, Charles Bryant too was liable to Topel. Additionally, the court stated, Charles Bryant owed a fiduciary duty to Ms. Bryant with respect to the disclosure and disposition of partnership assets and liabilities. As a result, the court reasoned, Charles Bryant "was to act appropriately as a co-fiduciary with Shirley Bryant" vis-a-vis Topel and other partnership creditors. Given that relationship, the court found, Ms. Bryant made a good faith effort to fulfill her fiduciary obligations when she returned the insurance money to Charles Bryant to pay those creditors. Noting also that Ms. Bryant secured no unfair advantage or improper profit, the court held that she lived up to her responsibilities even though Charles Bryant might have violated his when he failed to pay Topel. *Id.*

## II.

On appeal, Topel argues that the trial court erred in holding at the summary judgment stage that its claim was time-barred, and that Shirley Bryant acted properly when she transferred $390,000 from the Estate's bank account to Charles

4. Unless otherwise indicated, statute references in this opinion are to the codification and provisions in effect at the time of the events discussed.

5. D.C.Code § 20–1302 (1981 and 1989 Repl.) provides in pertinent part that "[a]n heir or legatee shall not be liable to claimants [against the estate] for any amount in excess

of the value of the property distributed to such heir or legatee, valued at the time of distribution or the time of filing suit, whichever is lower."

6. Rule 59(e) is made applicable to contested proceedings in the Probate Division by Super. Ct. Prob. R. 1(f).

Bryant.[7] Our review is *de novo.* Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See Potts v. District of Columbia,* 697 A.2d 1249, 1251 (D.C.1997); *Nader v. de Toledano,* 408 A.2d 31, 41–42 (D.C.1979). Applying that test, we do not agree that Ms. Bryant was entitled to summary judgment on the ground that Topel's claim was untimely. We affirm the award of summary judgment, however, because we do agree that Ms. Bryant acted properly when she returned the life insurance proceeds to Charles Bryant to pay the debts of the partnership.

**A.**

D.C.Code § 20–903(a)(1) provides, in relevant part, that "all claims against a decedent's estate ... shall be barred against the estate, the personal representative, and the heirs and legatees, unless presented within 6 months after the date of the first publication of notice of the appointment of a personal representative." Shirley Bryant published notice of her appointment as personal representative of the Estate of Robert Bryant beginning on May 25, 1995, in full compliance with the notice requirements of D.C.Code § 20–704 (1981 and 1989 Repl.) then in effect.[8] Topel filed its claim in November 1996, well outside the statutory six-month filing deadline.

■ Although the then-applicable provisions of D.C.Code § 20–704 did not require Ms. Bryant to furnish actual notice of her appointment to creditors, Topel argues that its claim was not time-barred because it had a constitutional right to receive such notice, by mail or otherwise.[9] In *Tulsa Prof'l Collection Servs. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), the Supreme Court held that due process requires the personal representative of an estate to provide actual notice of probate proceedings by mail or equally reliable means to all creditors whose identities are "known or reasonably ascertainable." [10] *Id.* at 490, 108 S.Ct. 1340; *accord, District of Columbia v. Gantt,* 558 A.2d 1120, 1127 (D.C.1989). Topel contends that its identity was, if not known to Shirley Bryant, reasonably ascertainable by her; for all

7. In its brief, Topel also argued that the trial court erred in rejecting its claim that Ms. Bryant received a distribution of Estate property, and in not permitting it to take discovery on that claim. Topel's counsel withdrew these challenges at oral argument, explaining that they were rendered moot by developments in Charles Bryant's bankruptcy proceeding. See note 2, *supra.*

8. The Probate Reform Act of 1994 amended D.C.Code § 20–704(b) to require the personal representative to send the published notice by registered or certified mail to "all creditors whose identities are known or whose identities are reasonably ascertainable by reasonably diligent efforts." 42 D.C.Reg. 63, 72 (1994). This amendment, applicable only to estates of decedents opened on or after July 1, 1995, *see* 42 D.C.Reg. 63, 84 (1994), incorporated the requirements of due process discussed in the body of this opinion, *infra.*

9. At some point, of course, Topel did receive actual notice of the probate proceedings. The record before us does not reveal when or how it did so. It appears to be undisputed, however, that Topel filed its claim within six months thereafter.

10. Whether a personal representative has complied with due process notice obligations is a mixed question of fact and law, and in *Pope* the Court remanded the case for a factual determination as to whether the personal representative knew or reasonably should have ascertained the identity of the hospital creditor in question. *See In re Estate of Pope,* 808 P.2d 640 (Okla.1990) (holding after remand that where executrix knew that hospital was providing care to decedent in his last illness, hospital was an identifiable creditor entitled to be furnished with actual notice).

she had to do was ask Charles Bryant or examine the financial records of the partnership. In response, Ms. Bryant's position is that it was reasonable for her to rely on Charles Bryant to take care of partnership debts, because she had never been involved in her husband's business.

■ The burden that due process imposes on the personal representative of an estate is not an onerous one. "[A]ll that the executor or executrix need do is make 'reasonably diligent efforts' ... to uncover the identities of creditors." *Pope,* 485 U.S. at 490, 108 S.Ct. 1340 (quoting *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983)). "Impracticable and extended searches" are not required. *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 317–18, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Publication notice is sufficient for creditors who are not reasonably ascertainable or whose claims are merely "conjectural." *Id.* (quoting *Mullane,* 339 U.S. at 317, 70 S.Ct. 652).

■ Under former D.C.Code § 41–135(d) (1981 and 1990 Repl.), the provision applicable here,[11] "[t]he individual property of a deceased partner shall be liable for all obligations of the partnership incurred while he was a partner but subject to the prior payment of his separate debts." Topel therefore was a creditor of the Estate of Robert Bryant, and its claims were not merely conjectural. Shirley Bryant was aware that the partnership was "heavily in debt" to its creditors. Although she may not have known the identities of those creditors (other than the IRS), she was obligated to make a reasonably diligent effort to identify them in order to give them actual notice of the probate proceedings. We cannot agree with the trial court that the record shows that Ms. Bryant made such efforts. She neither inquired of Charles Bryant nor sought access to the financial records of the business. However reasonable it was for Ms. Bryant to rely on Charles Bryant to pay the creditors, that reliance was not a substitute for making a reasonable attempt to learn who they were in order to fulfill her obligation to inform them of the probate of her husband's Estate. Nor does the record at this stage of the proceedings permit a finding that reasonable inquiry by Ms. Bryant would have been impracticable, burdensome or futile. There is no suggestion that Bryant and Bryant's financial records were unavailable,[12] that they did not disclose Topel as a creditor, or that Charles Bryant would have concealed Topel's identity.[13]

In short, Ms. Bryant did not establish that actual notice to Topel was excused and that publication alone was sufficient to put Topel on notice of the administration of Robert Bryant's Estate for purposes of the six-month limitations period in D.C.Code § 20–903(a)(1). Ms. Bryant therefore was not entitled to summary judgment on the ground that Topel's claim

---

11. The Uniform Partnership Act of 1996, currently codified at D.C.Code §§ 33–101.01 *et seq.* (2001), repealed former D.C.Code §§ 41–101 *et seq. See* 44 D.C.Reg. 777, 813 (1996). As the 1996 Act went into effect on April 9, 1997, it does not affect this case. *See* D.C.Code § 33–112.02 (2001).

12. To the contrary, Charles Bryant testified that Ms. Bryant could have examined the partnership's financial records had she wished.

13. We note that Ms. Bryant testified that sometime after Topel sued her, she asked Charles Bryant "who else is out there that can come after me," and that she had not yet received an answer to that question. The implications of this testimony were not developed.

was untimely.[14]

### B.

■ Although we cannot affirm on the ground that Topel's complaint was untimely, we are persuaded, on the unique facts of this case, that Ms. Bryant was entitled to summary judgment because she did not breach her duties as personal representative when she returned $390,000 to Charles Bryant for his use in paying the creditors of the partnership. In practical effect, Ms. Bryant declined on behalf of the Estate to accept Charles Bryant's payment for Robert Bryant's interest in the partnership ahead of the creditors of the partnership. That decision comported, in our view, with her and Charles Bryant's obligations under existing law.

Topel contends that Shirley Bryant is personally liable for its claim against the partnership and, derivatively, against Robert Bryant's Estate, because by returning the insurance proceeds to Charles Bryant, she deprived the Estate of funds with which to pay Topel. In acting as the personal representative of her husband's Estate,[15] Shirley Bryant was "under a general duty to settle and distribute the estate of the decedent" in accordance with the law and the terms of his will, "fairly considering the interests of all interested persons and creditors." D.C.Code § 20–701(a) (1981 and 1989 Repl.). Although a personal representative "may, at any time," pay unbarred claims, she will be "personally liable to any other claimant whose claim is allowed and who is injured by such payment" if:

(1) the payment was made before the expiration of 6 months from the date of the first publication of notice of the personal representative's appointment and the personal representative failed to require the payee to give adequate security to refund any of the payment necessary to pay other claimants; or

(2) the payment was made, due to the negligence or willful fault of the personal representative.

D.C.Code § 20–909(b) (1981 and 1989 Repl.). Ms. Bryant did not require Charles Bryant to furnish adequate security to refund any of the insurance proceeds that she returned to him, and Topel argues that her payment to him was negligent at the least.

Nonetheless, we are satisfied that Ms. Bryant acted in accordance with then-governing law. Under former D.C.Code § 41–130(4) (1981 and 1990 Repl.), the death of Robert Bryant triggered the dissolution of his partnership with Charles Bryant. To be sure, this event did not discharge either partner's existing liability

---

**14.** We refrain, however, from holding that Topel conclusively prevailed on the timeliness question. It appears to us that on summary judgment, neither party established that the issue was beyond genuine factual dispute.

**15.** While Ms. Bryant had yet to be appointed formally to serve as personal representative, D.C.Code § 20–505 (1981 and 1989 Repl.) provided that "[a]cts which by statute are authorized to be done without prior Court approval after the issuance of letters but which in fact were committed by the personal representative prior to issuance of letters, when done in good faith, shall have the same effect as acts occurring after the issuance of letters." A personal representative is authorized to pay valid claims and distribute the estate without first obtaining court approval. See D.C.Code §§ 20–701(a), 20–741(r) (1981 and 1989 Repl.). The trial court found no genuine dispute (and we agree) that Ms. Bryant acted in good faith, and without obtaining any improper personal advantage, when she transferred the funds to Charles Bryant to enable him to pay partnership creditors. Thus we treat that act as that of a *de facto* personal representative, and evaluate it against a personal representative's legal obligations.

for partnership obligations, and the individual property of Robert Bryant's Estate was liable for such obligations (subject to the prior payment of his separate debts). *See* D.C.Code § 41–135(a), (d) (1981 and 1990 Repl.). More importantly, however, Charles Bryant continued the business as a sole proprietorship, without liquidation of partnership affairs, with the consent of his deceased partner's personal representative and an assignment of his deceased partner's rights. *See* D.C.Code § 41–140(b), (c) (1981 and 1990 Repl.). In such circumstances, former D.C.Code § 41–140(h) provided that the creditors of the dissolved partnership "have a *prior right* to any claim of . . . the representative of the deceased partner against the person . . . continuing the business on account of the . . . deceased partner's interest in the dissolved partnership or on account of any consideration promised for such interest or for his right in partnership property" (emphasis added).

Given that Bryant and Bryant was heavily in debt, we read § 41–140(h) to mean that the existing creditors of the partnership had a superior right to the insurance proceeds that Charles Bryant turned over to Shirley Bryant. Charles Bryant was obligated to use those funds to pay the creditors of the business (including Topel) before using them to buy out his deceased partner's interest. It was reasonable and appropriate, therefore, for Ms. Bryant not to accept those funds, but instead to return them immediately to Charles Bryant to meet partnership debts first, as she did. We think it immaterial that initially Ms. Bryant deposited the money in the Estate's bank account. She did not keep the bulk of the money in that account for any significant length of time, and she did not use it to benefit herself or the Estate in any way. In substance, if not in form, Ms. Bryant simply declined to accept funds to which Topel and other

creditors of Bryant and Bryant had a prior right, in conformance with D.C.Code § 41–140(h). Moreover, as the trial court ruled, Ms. Bryant had every right to expect Charles Bryant to use the funds to pay the creditors. She did nothing to hinder, and everything to facilitate, the efforts of partnership creditors to collect what was owed them directly from the entity continuing the partnership business. She did not place funds out of their reach. As we see it, therefore, even construing the evidence in the light most favorable to Topel as we are required to do, Topel has not demonstrated "specific facts showing that there is a genuine issue for trial." *Potts,* 697 A.2d at 1251 (citations omitted). On the undisputed facts, Ms. Bryant did not violate her duties as personal representative of Robert Bryant's Estate, but rather acted in accordance with law, and so was entitled to summary judgment in her favor.

### III.

For the foregoing reasons, the decision of the trial court is affirmed.

*So ordered.*

SCHWELB, Associate Judge, concurring in part and concurring in the judgment.

In my opinion, the court's disposition of the case on the merits in Part II B of the opinion makes it unnecessary to reach the question whether Topel's claim is time-barred. In fact, the entire discussion of that issue in Part II A is *obiter dictum* and I would omit it. On the merits of the non-dispositive issued that the majority has nevertheless decided to address, however, I agree that Topel's claim was not untimely.